IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| Chamberlain Family Limited Partnership, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 17-5078 TLB |
| Steven Sanders, Sr., Steven Sanders, Jr., | ) |
| Danielle Sanders, David Ethredge, Ioulia | ) |
| Nikiforova, and Kristine Kolbus, | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants, | ) |
| | ) |
| --and-- | ) |
| | ) |
| NATCO Communications, Inc. | ) |
| | ) |
| Nominal Defendant. | ) |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff, the Chamberlain Family Limited Partnership ("Chamberlain"), for its Verified Shareholder Derivative Complaint against Defendants Steven Sanders, Sr., Steven Sanders, Jr., and Danielle Sanders (collectively, the "Sanders Family"), David Ethredge, Ioulia Nikiforova, and Kristine Kolbus (collectively, along with the Sanders Family, "Defendants") and Nominal Defendant NATCO Communications, Inc. ("NATCO"), states:

## I.     INTRODUCTION

1.     This is a shareholder derivative action brought by NATCO's largest shareholder (Chamberlain) against Defendants—who are members of NATCO's board of directors and management team—alleging Defendants breached their fiduciary duties, committed corporate waste, and engaged in fraud. Even though Defendants are minority shareholders who hold less than 42% of NATCO's shares, Defendants managed the business for their own personal,

financial gain and to the detriment of NATCO's remaining, non-management shareholders. Defendants accomplished this through, among other things, excessive, above-market salaries and bonuses, access to luxury automobiles under the auspices of "company cars," and by seeking expense reimbursement for personal expenditures.

2.      Through this action, Chamberlain seeks, among other things, (i) a *pro rata* return of the funds Defendants misappropriated; and (ii) the establishment of an independent committee to determine future NATCO executive compensation. In addition, Chamberlain may petition the Court to appoint a receiver to take control of NATCO's financial affairs.

3.      This action is brought by Chamberlain on behalf of all NATCO's shareholders, is necessary to protect NATCO from further mismanagement, and seeks to cease such corporate wrongdoing for the benefit of NATCO and its shareholders.

## II.      JURISDICTION AND VENUE

4.      The Court has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff Chamberlain and all Defendants are citizens of different states for purposes of 28 U.S.C. § 1332 diversity subject matter jurisdiction and the matter in controversy exceeds $75,000, exclusive of interests and costs.

5.      Nominal Defendant NATCO is an Arkansas corporation with its principal place of business in Arkansas, named solely in a nominal capacity, and is completely diverse with Plaintiff, an Illinois citizen for purposes of 28 U.S.C. § 1332 diversity subject matter jurisdiction.

6.      The Court has personal jurisdiction over each Defendant because each Defendant has committed acts related to the claims at issue in this Complaint within this District.

7.      Venue is proper in the Western District of Arkansas because Nominal Defendant NATCO Communications, Inc., is headquartered in this District, numerous Defendants are

citizens of Arkansas, and a substantial portion of the actions complained of herein occurred in this District.

### III.   PARTIES

8.     Chamberlain is an Illinois partnership owning 42.5653% of all shares in NATCO Communications, Inc., and has continuously held such shares at all times relevant hereto. Chamberlain owns 10,599 shares of NATCO's 22,198 Class B shares or 47.7475% of the Class B shares. And Chamberlain owns 2,340 shares of NATCO's 8,200 Class A shares or 28.5366% of the Class A shares.   Chamberlain is the largest single shareholder of NATCO Communications, Inc.   The partners of Chamberlain are Warren Stidolph, Susan Mazer, and Shirley Chamberlain; each is an Illinois citizen.

9.     Nominal Defendant NATCO is an Arkansas corporation with its principal place of business in Flippin, Arkansas.   NATCO is a holding company and the parent or sole member of the following entities: (i) NATCO Technologies, Inc.; (ii) the Northern Arkansas Telephone Company; (iii) NATCO Video, LLC; (iv) El Chico of Mountain Home Arkansas, LLC; and (v) South Shore Restaurant Holdings, LLC.   All such entities are referred to collectively herein as "NATCO." No entity referenced in this paragraph is considered a citizen of Illinois for purposes of 28 U.S.C. § 1332 diversity subject matter jurisdiction.

10.     Defendant Steven Sanders, Sr., is the Chief Executive Officer and Chairman of the board of directors of NATCO.   Steven Sanders, Sr., first joined the board of directors of NATCO in April 1967 and is a citizen of Arkansas.

11.     Defendant Steven Sanders, Jr., is the President and General Manager and a member of NATCO's board of directors.   Steven Sanders, Jr., first joined the NATCO board in April 1999 and is a citizen of Arkansas.

12.     Defendant Danielle Sanders is the Senior Executive Assistant of NATCO and the wife of Defendant Steven Sanders, Jr.  Ms. Sanders is a citizen of Arkansas.

13.     Defendant Steven Sanders, Sr., Defendant Steven Sanders, Jr., and Defendant Danielle Sanders are referred to collectively herein as the "Sanders Family."

14.     Defendant David Ethredge has been a member of NATCO's board of directors since April 2016 and is a citizen of Arkansas.

15.     Defendant Ioulia Nikiforova has been a member of NATCO's board of directors since April 2016.  Upon information and belief, Ms. Nikiforova is a citizen of Florida.

16.     Defendant Kristine Kolbus has been a member of NATCO's board of directors since April 2016.  Upon information and belief, Ms. Kolbus is a citizen of Colorado.

## IV.     DEFENDANTS' FIDUCIARY DUTIES

17.     By reason of their positions as directors and fiduciaries of NATCO, and by virtue of their ability to control the business and corporate affairs of NATCO, each Defendant owed and owes NATCO and its shareholders fiduciary obligations of trust, loyalty, good faith, candor, and due care, and were and are required to use their utmost ability to control and manage NATCO in a lawful, fair, just, honest, and equitable manner.  Defendants were and are required to act in furtherance of the best interests of NATCO and its shareholders so as to benefit all shareholders equally and not in furtherance of their own personal interest or benefit.

18.     Each of the Defendants owes to NATCO and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of NATCO and in the use and preservation of its property and assets, and the highest obligation of fair dealing.

19.     Each of the Defendants was and is an agent of NATCO and was at all times acting within the course and scope of such agency.

4

## V.    FACTUAL ALLEGATIONS

**A.    NATCO's Founding and Core Business**

20.    In 1951, Artel Chamberlain and Ray Sanders founded NATCO with the purchase of the Flippin Telephone Company, which installed telephone lines and provided telephone services to only 42 customers in rural Arkansas.

21.    Thereafter, in the early 1950's, Artel Chamberlain and Ray Sanders significantly expanded NATCO's business operations by installing telephone lines throughout rural Arkansas.

22.    By 1957, as outlined in a NATCO document prepared by Defendant Steven Sanders, Sr., when NATCO's "events became more hectic" due to the ever-expanding business, Art Chamberlain, who was considered a "telephone man, good friend, founder, and major stockholder of the company took a leave from [his position at] Illinois Bell to help [NATCO]" and "did a splendid job in every capacity."

23.    Indeed, due in part to Art Chamberlain's "splendid" work, as of 1958, "life was getting easier and more comfortable" for the Sanders family as "there was more money for salaries" for NATCO employees, and NATCO continued to successfully grow and expand.

24.    Seven years later, in or around 1965, NATCO's success allowed Ray Sanders to purchase a home, which was "real progress" as "a first for the [Ray] Sanders family was buying the only house they ever owned." As outlined below, the Sanders Family has seemingly forgotten these humble roots.

25.    As technologies evolved, NATCO's business later further expanded to provide additional services beyond telephone lines.

26.     NATCO currently provides a "robust network and an ever-expanding list of residential and business services including voice, broadband, television, cellular and network and carrier services," as summarized on NATCO's website.

27.     NATCO's core and primary business is—and has always been—providing telecommunications services.

28.     Indeed, in September 2011, Defendant Steven Sanders, Jr., emphasized NATCO's core business at the corporation's 60th anniversary by publicly stating it was "an honor to continue the work started by my grandfather [Ray Sanders] 60 years ago . . . [a]lthough there have been tremendous changes in the telecommunication industry over the last six decades, NATCO's commitment to the area we serve remains constant." Defendant Steven Sanders, Jr., emphasized that NATCO "grew from serving 42 landline customers to providing voice, Internet and satellite services over a 658-square mile area, encompassing parts of Marion and Boone counties" in part due to the "splendid" work performed by founder Art Chamberlain.

**B.     Evolution of NATCO's Key Officers and Board of Directors**

29.     In or around 1977, both founders of NATCO (Artel Chamberlain and Ray Sanders) considered retirement after successfully growing NATCO's business for over 25 years.

30.     Ray Sanders was officially put on "sick leave" from NATCO in 1977, retired from NATCO in 1978, and unfortunately passed away in October 1982.

31.     As summarized by Defendant Steven Sanders, Sr., following Ray Sanders death "the reins of NATCO passed to [Defendant] Steven Sanders" Sr.

32.     Artel Chamberlain unfortunately passed away in August 1981.  As summarized by Defendant Steven Sanders, Sr., "everyone in the telephone company was shocked" by Artel Chamberlain's death, as he "was one of the original founders of the telephone company" and had

6

"spent a lot of time working with Ray [Sanders] in Arkansas" and had "served the company well and had always worked well with Ray [Sanders] and later with" Defendant Steven Sanders, Sr.

33.     Following the unfortunate passing of NATCO's founders, the next generation of family employees began to materially operate and oversee NATCO's business operations.

34.     For instance, Shirley Chamberlain (Artel Chamberlain's wife) was elected to NATCO's board of directors in April 1982 and assisted in materially operating and expanding NATCO thereafter.  Shirley Chamberlain remains a partner in Plaintiff Chamberlain today.

35.     Defendant Steven Sanders, Sr. (Ray Sanders' son) was named President of NATCO in or around 1977 and assisted in operating and expanding NATCO.

36.     Around the turn of the century, once again, the next generation of family employees began to materially operate and oversee NATCO's business operations.

37.     In April 1999, Defendant Steven Sanders, Jr. (Ray Sanders' grandson), and Warren Stidolph (Artel Chamberlain's son) were elected to NATCO's board of directors.

38.     Warren Stidolph is a partner in Plaintiff Chamberlain.

39.     In February 2004, Gerald D. Duffy was elected to NATCO's board of directors.

40.     While not a family member of NATCO's founders, Mr. Duffy is a skilled attorney with unique knowledge of the legal and governmental requirements of telecommunications, real estate, land use, and environmental matters.  Mr. Duffy was thus well suited to provide insight and direction on NATCO's board of directors.

41.     In April 2006, Susan Mazer (Artel Chamberlain's daughter) was elected to NATCO's board of directors, replacing her mother (Shirley Chamberlain).

42.     Susan Mazer is a partner in Plaintiff Chamberlain.

43.     Accordingly, as of April 2006, NATCO's board consisted of five members.  Two were descendants of founder Artel Chamberlain (Warren Stidolph and Susan Mazer), two were descendants of founder Ray Sanders (Steven Sanders, Sr., and Steven Sanders, Jr.), and the fifth member was a skilled attorney with telecommunications experience (Gerald Duffy).

44.     In April 2009, Defendant Steven Sanders, Sr., was elected Chairman of the Board and "Chief Executive Officer" of NATCO and Defendant Steven Sanders, Jr., was elected President & General Manager of NATCO.

45.     Since April 2009, Defendant Steven Sanders, Sr., was no longer significantly involved in NATCO's business operations despite his official title of "Chief Executive Officer." Instead, his son, Defendant Steven Sanders, Jr., primarily operated the day-to-day responsibilities of the business under his role as President & General Manager.

46.     Since approximately 2009, Defendant Steven Sanders, Sr., spends a large portion of his time in the Fort Lauderdale, Florida area and is rarely present at NATCO's Flippin, Arkansas headquarters, nor does he meaningfully contribute to NATCO's day-to-day business activities.

47.     Defendant Steven Sanders, Sr., also recently opened an "office" in Florida with NATCO's capital without board approval.  NATCO's bylaws, however, provide that NATCO "may also have offices at such other places [than the principal office in Flippin, Arkansas], *but only within the State of Arkansas*" (emphasis added).  As such, Defendant Steven Sanders, Sr.'s Florida "office" is in plain violation of NATCO's bylaws and is an unapproved and unnecessary expense damaging NATCO and its shareholders.

48.     Indeed, Defendant Steven Sanders, Sr., is not even listed on NATCO's website as an employee despite his formal title as "Chief Executive Officer." NATCO's website, however, does list NATCO's other various employees, including receptionists.

49.     Defendant Steven Sanders, Jr.'s personal website confirms that he "serves as President and General Manager of NATCO . . . where he is responsible for the overall leadership and strategic direction of the company."

50.     Accordingly, since approximately April 2009, Defendant Steven Sanders, Jr. (Ray Sanders' grandson), was and is the primary employee in charge of the "overall leadership and strategic direction of" NATCO under his formal title as "President & General Manager."

51.     In Defendant Steven Sanders, Sr.'s words, the "reins of NATCO [have now] passed to" his son, Defendant Steven Sanders, Jr. As discussed below, this passing of the "reins," however, has not stopped Steven Sanders, Sr., from siphoning approximately $1 million per year from NATCO and its shareholders.

**C.     NATCO's Ill-Advised Activities Outside its Core Business**

52.     NATCO's core business is providing telecommunications services.

53.     As of at least 1980, however, Defendants Steven Sanders, Sr., and Steven Sanders, Jr., believed that NATCO needed to develop "other activities that would provide alternative income" unrelated to NATCO's core telecommunications services.

54.     To that end, Defendants Steven Sanders, Sr., and Steven Sanders, Jr., as "Chief Executive Officer" and "President & Manager," respectively, began theorizing new ways to invest and utilize NATCO's capital and assets outside its core telecommunications business.

55.     Thereafter, they posited ways to spend NATCO's capital on engagements outside NATCO's core business and outside their own expertise, even though Defendants Steven

Sanders, Sr., and Steven Sanders, Jr., had little experience in anything other than the telecommunications business.

56. Warren Stidolph, Susan Mazer, and Gerald Duffy (then NATCO board members) believed, however, that NATCO should continue to concentrate on and expand its core business of telecommunications services and expressed these beliefs on various occasions.

57. After all, NATCO had been a telecommunications business for over a half decade, and the Sanders Family and other NATCO employees and officers had no experience with anything other than working for a telecommunications business.

58. Warren Stidolph, Susan Mazer, and Gerald Duffy believed—and currently believe—that NATCO should continue to, of course, adapt as technology evolves but that NATCO should focus primarily on telecommunications and related technology services.

59. Indeed, in 2011, Steven Sanders, Jr., even admitted that "[t]echnology evolves in sometimes strange and unpredictable ways," but "[w]hatever comes about, [NATCO] want[s] to bring it to a person's house." In recent years, however, both Defendants Steven Sanders, Sr., and Steven Sanders, Jr., seem to have forgotten those words and have purposefully diverged from NATCO's core telecommunications business.

60. For instance, in or around 2005, the Sanders Family began opening and operating fast-food and luxury restaurants with NATCO's corporate funds.

61. Prior to opening such restaurants, Defendants Steven Sanders, Sr., and Steven Sanders, Jr.—or any other person affiliated with NATCO—had no experience whatsoever owning and operating restaurants. They had never previously worked at a restaurant, operated a restaurant, or engaged in professional culinary activities.

10

62.     Warren Stidolph, Susan Mazer, and Gerald Duffy (then NATCO board members) openly questioned to Defendants Steven Sanders, Sr., and Steven Sanders, Jr.—both in board meetings and otherwise—whether investing in restaurants was the most appropriate use of NATCO's corporate funds.

63.     Defendants Steven Sanders, Sr., and Steven Sanders, Jr., however, dismissed such concerns and operated NATCO as they saw fit.

64.     In or around 2005, the Sanders Family set up and funded "South Shore Restaurant Holdings, LLC" (hereafter "South Shore LLC") and "El Chico of Mountain Home, Arkansas, LLC" (hereafter, "El Chico LLC") to pursue their restaurant businesses.

65.     Both entities were entirely funded by and are wholly-owned subsidiaries of Nominal Defendant NATCO Communications, Inc.

66.     Nominal Defendant NATCO Communications, Inc., contributes all capital to South Shore LLC and EL Chico LLC.  Neither Defendants Steven Sanders, Sr., and Steven Sanders, Jr.—nor any member of the Sanders family—have ever contributed their own personal funds to such entities.

67.     Defendant Steven Sanders, Jr.'s website states that he "has diverse personal and professional interests [and] is the proprietor of several restaurants," but fails to mention that these "several restaurants" are owned by NATCO, not him personally.

68.     South Shore LLC owns and operates certain "Cantina Laredo" restaurant franchises in or around Arkansas, Florida, Missouri, and New York.

69.     El Chico LLC owns and operates certain "El Chico Café Mexican Food" fast-food restaurant franchises in the Arkansas area.

70.     Defendant Steven Sanders, Jr., is the primary NATCO employee operating South Shore LLC and EL Chico LLC and their related restaurants despite his lack of restaurant or culinary experience.

71.     Indeed, Defendant Steven Sanders, Jr., has stated to NATCO employees that he spends the majority of his time operating—and attending dinners and other meals—at such restaurants owned by South Shore LLC and El Chico LLC.

72.     In addition, as confirmed by his own website, Defendant Steven Sanders, Jr., "owns a property development company" named Fastlane Properties, Inc., which is not affiliated with NATCO.

73.     By focusing on operating such restaurants and his own personal property development company, Defendant Steven Sanders, Jr., has not dedicated his full professional time to NATCO's core telecommunications business.   And since 2009, Defendant Steven Sanders, Sr., performs little to no work for NATCO, as outlined above.

74.     South Shore LLC and El Chico LLC have never been profitable.

75.     South Shore LLC and El Chico LLC have lost money in each and every year since their existence (or for approximately 12 years).

76.     The money invested in—and subsequently continuously lost in—the South Shore LLC and El Chico LLC restaurant operations could have otherwise been allocated to NATCO's core telecommunications business.

77.     In 2016, South Shore LLC had a net loss of $431,768.19.

78.     In 2016, El Chico LLC had a net loss of $80,592.34.

79.     Previously, South Shore LLC and El Chico LLC lost a combined total of $132,279 in 2014 and lost $461,980 in 2015.  Accordingly, the restaurant operations are performing even worse than in prior years.

80.     Defendant Steven Sanders, Jr., previously blamed the restaurants' poor performance on the economic downturn and took no personal responsibility for the restaurants' failings.

81.     Since the economy has recovered, however, South Shore LLC and El Chico LLC have continued in a financial nosedive under Defendant Steven Sanders, Jr.'s leadership.

82.     Indeed, in a November 2015 board meeting, Defendant Steven Sanders, Jr., "reported that all restaurant partnership stores are down in sales from the previous year."  More recently, in April 2016, Defendant Steven Sanders, Jr., admitted in an April 2016 NATCO board meeting that "2015 represented 'rock bottom' for the restaurants since [South Shore LLC] and [EL Chico LLC] were formed."  There is currently no indication that such restaurant operations will be profitable and in the best interest of NATCO and its shareholders.

83.     The "economy" is not to blame for South Shore LLC's and El Chico LLC's poor economic performance, as Defendant Steven Sanders, Jr., has repeatedly claimed.

84.     Accordingly, South Shore LLC and El Chico LLC have negatively extracted money from NATCO's core business for at least approximately the last 12 years.

85.     Starting South Shore LLC and EL Chico LLC were poor business decisions by Defendants Steven Sanders, Sr., and Steven Sanders, Jr., and outside NATCO's core business.

86.     Beyond the poor restaurant investments, Defendants Steven Sanders, Sr., and Steven Sanders, Jr., have also made other very questionable and ill-advised investments with NATCO's funds to the detriment of NATCO's shareholders.

87.    At the express direction of Defendants Steven Sanders, Sr., and Steven Sanders, Jr., NATCO has "invested" in gold and other precious metals.

88.    Neither Defendants Steven Sanders, Sr., and Steven Sanders, Jr.—nor any other person affiliated with NATCO—had any experience whatsoever investing in precious metals.

89.    As of September 2016, NATCO has "invested" at least $637,365.33 in gold and other precious metals.

90.    At least a portion of these gold and precious metals is stored in Defendant Steven Sanders, Jr.'s personal residence and not at NATCO's various business properties.

91.    Warren Stidolph, Susan Mazer, and Gerald Duffy (all prior NATCO board members) repeatedly voiced—during board meetings and otherwise—that "investments" in precious metals were ill-advised and an unsound expenditure of NATCO's capital outside its core telecommunications business.

92.    As of September 2016, the unrealized loss of such gold and other precious metals investments by Defendants Steven Sanders, Sr., and Steven Sanders, Jr., is -$174,242.03.

93.    The value of NATCO's precious metals "investments" is likely to further decline.

94.    Thus, the "investment" by Defendants Steven Sanders, Sr., and Steven Sanders, Jr., in precious metals has led NATCO to lose at least $174,000, with more losses likely to come in the future to the detriment of NATCO and its shareholders.

95.    Defendants Steven Sanders, Sr., and Steven Sanders, Jr., have even indicated a desire to expend additional NATCO funds on such ill-advised investments in precious metals.

14

**D.      NATCO's Recent and Steady Revenue Decline**

96.      Over the past approximately ten years, NATCO's revenue has steadily declined due to the failure to concentrate on NATCO's core telecommunications business, as well as other challenges.

97.      Indeed, a 2012 valuation noted a "decreasing trend in all sources of [NATCO] revenue since 2007" and concluded that NATCO "continues to face severe competition from cellular and cable services" such as Verizon Wireless and AT&T Wireless.

98.      In 2007, NATCO earned approximately $16.6 million in total revenue.   That figure steadily declined thereafter and, by 2012, lessened to $13.2 million in total revenue.

99.      In 2015, NATCO earned approximately $9.8 million in total revenue.

100.      In 2016, NATCO earned approximately $9.6 million in total revenue.

101.      Over the past approximately ten years, NATCO has lost nearly $7 million in top-line annual revenue.

102.      The steady, downward revenue trend is likely to continue—and will likely escalate—if NATCO continues to be run in the manner it has been since Defendant Steven Sanders, Jr., took over the "reins" of the corporation.

103.      Despite NATCO's noted "fierce competition" with other telecommunications service competitors, Defendant Steven Sanders, Jr., has focused efforts away from NATCO's core telecommunications business and instead ventured into restaurant operations and precious metal "investments," leading to increased losses for NATCO to the detriment of shareholders.

104.      When a company steadily loses revenue, company expenses and bonuses normally also decline.  Executives are typically not given significant discretionary performance bonuses as a reward for poor financial performance by the company.

105.    Here, NATCO's executive compensation *increased* while its financial performance and revenue steadily *decreased*.  Although the bonuses were designed to be "performance based," they were awarded in a manner entirely inconsistent with this philosophy.

106.    Board members and officers have a fiduciary duty to a corporation not to pay themselves inherently unfair and excessive compensation.

### E.    The Looting of NATCO

107.    Plaintiff Chamberlain owns 42.5653% of all shares in NATCO and is the corporation's largest single shareholder.

108.    Until April 2016, two of the three partners in Plaintiff Chamberlain (Warren Stidolph and Susan Mazer) were NATCO board members.

109.    Despite Plaintiff Chamberlain and its partners' significant ownership stake, NATCO is effectively controlled by the Sanders Family.

110.    The Sanders Family Limited Partnership owns 40.8547% of all NATCO's shares.

111.    The Jill K. Horvath Living Trust owns 12.8364% of all shares in NATCO.  Ms. Horvath is the sister of Defendant Steven Sanders, Sr.  Upon information and belief, Ms. Horvath is not materially involved in the operations of NATCO, is unaware of the other Sanders Family members' improper actions related to NATCO as detailed herein, and thus is not named as a defendant in this lawsuit.  Her daughter (Defendant Kristine Kolbus) is named as a defendant, however, due to her current role as a NATCO board member and for the reasons outlined below.

112.    Together, persons affiliated with the Sanders Family own at least 53.6911% of all shares in NATCO and thus the Sanders Family effectively controls NATCO under the

16

corporation's bylaws, including the ability to determine each of NATCO's five board member seats.

113.    Accordingly, while Plaintiff Chamberlain and other non-Sanders shareholders can make suggestions and voice disagreement with NATCO's business operations, ultimately, the Sanders Family has the shareholder voting authority to make major corporation decisions such as hiring officers and directing NATCO's business operations and future.

114.    The Sanders Family's shareholder voting majority, however, does not permit it to self-deal, take actions detrimental to other shareholders, or otherwise fail to meet its fiduciary duties to NATCO.

115.    Over the past three years, Mr. Stidolph and Ms. Mazer (then board members and majority partners in Plaintiff Chamberlain) began voicing concerns about the direction of NATCO and the excessive, very significantly above-market bonuses the Sanders Family was receiving.

116.    For instance, Mr. Stidolph and Ms. Mazer voiced during board meetings and elsewhere that NATCO's restaurant operations were ill-advised and that NATCO should remain focused on its core telecommunications business due to NATCO's steady revenue decline.

117.    In addition, Mr. Gerald Duffy (the only non-descendant of NATCO's founders) voiced similar concerns based on his vast experience in the telecommunications business and the corporate arena.

118.    Such concerns fell on deaf ears to Defendants Steven Sanders, Sr., and Steven Sanders, Jr., and they continued to focus their time and NATCO's capital on non-core issues such as restaurant operations and precious metals investments.

119.    Most troubling, Mr. Stidolph, Ms. Mazer, and Mr. Duffy began to question the excessive, significantly above-market salaries and bonuses the Sanders Family was enjoying as NATCO's revenue steadily declined.

### 1.    Defendant Sanders, Sr.'s Excessive Compensation

120.    Defendant Steven Sanders, Sr., enjoyed a salary of $357,760 from January 2006 to the present, even though he rarely is involved in the day-to-day operations, primarily resides in Florida, and passed the "reins" to his son in 2009.

121.    Mr. Stidolph, Ms. Mazer, and Mr. Duffy found the Sanders Family bonuses to be even more troubling and voiced concerns about such compensation on numerous occasions.

122.    Bonuses are performance-based and a reflection of an employee's and the corporation's performance.

123.    While NATCO's revenues and performance *decreased*, the Sanders Family's bonuses *increased*.

124.    In 2016, Defendant Steven Sanders, Sr., was awarded a ***$625,000 bonus*** as the corporation declined, and he spent the majority of his time in Florida, leaving the "reins" of NATCO to his son.  NATCO paid Defendant Steven Sanders, Sr., at least ***$982,760 in 2016***.

125.    Previously, Defendant Steven Sanders, Sr., received other exorbitant bonuses despite his limited involvement in the corporation: (i) $500,000 in 2015; (ii) $500,000 in 2014; (iii) $500,000 in 2013; (iv) $500,000 in 2012; and (v) $650,000 in 2011.

126.    NATCO's current board of directors and officers have never provided any explanation why Defendant Steven Sanders, Sr., is entitled to a $125,000 performance bonus *increase* in 2016 ($500,000 in 2015 vs. $625,000 in 2016) despite being asked to do so, nor can there be legitimate reason for the increase, given NATCO's poor and declining performance (and

his lack of any performance). Nor can Defendants offer any legitimate business justification for paying Defendant Steven Sanders, Sr., a $625,000 bonus in 2016.

127.    Since 2011, following Defendant Steven Sanders, Sr.'s lack of involvement in NATCO as he enjoys his time in Florida, NATCO has paid him at least ***$5.4 million*** in salary and bonuses, as NATCO's yearly revenue nosedived approximately $7 million during that same period.

### 2.    Defendant Steven Sanders, Jr.'s Excessive Compensation

128.    Defendant Steven Sanders, Jr.'s recent salaries and bonuses are similarly excessive.

129.    Defendant Steven Sanders, Jr., received a $200,000 salary from 2007 to present.

130.    Defendant Steven Sanders, Jr., received a $300,000 bonus in 2016, for a total of $500,000 in salary and bonuses in 2016.

131.    Again, Defendant Steven Sanders, Jr.'s work has been focused on NATCO's restaurants, which have yet to be profitable and have depleted the corporation since their inception.

132.    Soon after Defendant Steven Sanders, Jr., stated the restaurant business hit "rock bottom" and oversaw a consistent revenue decline in NATCO, his bonus ***increased $100,000*** ($200,000 in 2015 vs. $300,000 in 2016).

133.    There is no legitimate business justification in providing Defendant Steven Sanders, Jr., a $300,000 bonus in 2016, given NATCO's poor and declining performance and his own performance.

134.    The highest-paid NATCO employee who does not have Sanders as a last name earned ***less than that bonus increase in total salary*** by earning $95,500 in salary in 2016 as a

"Revenue Requirements Manager." Put differently, Defendant Steven Sanders, Jr.'s 2016 performance bonus was larger than the highest salary of *any NATCO employee* who does not have Sanders as a last name.

135.    Previously, Defendant Steven Sanders, Jr., made other inherently unfair and exorbitant bonuses despite overseeing NATCO's steady revenue decline: (i) $200,000 in 2015; (ii) $160,000 in 2014; (iii) $136,000 in 2013; (iv) $136,000 in 2012; and (v) $160,000 in 2011.

136.    Since 2011, NATCO has paid Defendant Steven Sanders, Jr., almost *$2.3 million* in salary and bonuses as he oversaw a consistent decline in NATCO's revenue (a loss of approximately $7 million over that same time period) and primarily focused his efforts on the unprofitable restaurant businesses outside NATCO's core competency.

### 3.    Defendant Danielle Sanders' Excessive Compensation and Fraud

137.    The compensation paid by NATCO to Defendant Danielle Sanders (Defendant Steven Sanders, Jr.'s wife) is even more troublesome; indeed, it is fraudulent.

138.    Defendant Danielle Sanders is listed as a "Senior Executive Assistant" and is an hourly, non-salaried employee. From June 2010 to the present, her wage was $24.00 per hour.

139.    Thus, Defendant Sanders must work for NATCO for one hour to receive $24.00.

140.    As recounted by various NATCO employees in 2016 and 2017, Defendant Danielle Sanders, however, is rarely, if ever, working for NATCO. Indeed, a 2016 NATCO employee recounted on various occasions that Defendant Danielle Sanders, at most, came to the office for two to three hours each day, very rarely worked a full day, and never performed meaningful work for NATCO in 2016. The 2016 NATCO employee has also recounted that Defendant Danielle Sanders has never worked a full work week and her "work" was focused

almost entirely on assisting her husband (Defendant Steven Sanders, Jr.) on personal and family matters for absolutely no benefit to NATCO's business operations.

141.   Upon information and belief, she also performed little actual work for NATCO in years prior to 2016.

142.   Defendant Danielle Sanders did not work a single week in 2016, where she performed NATCO company work for a total of 40 hours per week.

143.   Despite this, NATCO's hourly employee reports and time sheets show that Defendant Danielle Sanders consistently billed NATCO for 40 hours of work per week in nearly each and every week in 2016 (excluding holidays).

144.   Attached as **Exhibit A** is Defendant Danielle Sanders' 2016 time report showing, in detail, that she consistently billed full 40-hour weeks (totaling 80 hours for each bi-weekly paycheck) and received compensation totaling $88,997.21 for work in 2016 that she did not actually perform.

145.   In addition, a March 10, 2016 12:32 p.m. post from Defendant Danielle Sanders' social media account shows that she spent the entire "day" of March 10, 2016 (a Thursday), at a charity event and thus did not perform any actual, billable work for NATCO on March 10, 2016. Defendant Danielle Sanders' time report, however, shows she billed 80 hours for the March 4, 2016, to March 18, 2016 pay period and thus billed NATCO for hourly work in which she was not actually present at NATCO, nor performing work for NATCO. *See* **Exhibit A**.

146.   Defendant Danielle Sanders has thus billed NATCO for unperformed work, which amounts to fraud.

147.   Further, Defendant Danielle Sanders' role as "Senior Executive Assistant" is primarily assisting her husband (Defendant Steven Sanders, Jr.) and does not have a legitimate business purpose for NATCO.

148.   It is fraud for an hourly employee to bill a corporation for hourly work she did not actually perform.

149.   In 2016, Defendant Danielle Sanders billed NATCO for 1,976 hours of work.

150.   In 2016, no other NATCO hourly employee billed the corporation for equal or greater hours than Defendant Danielle Sanders.   Most NATCO hourly employees billed approximately 1,800 total hours in 2016 (176 hours less than Defendant Danielle Sanders), and the second-highest hourly employee billed 1,951 total hours in 2016 (25 hours less than Defendant Danielle Sanders).  Another NATCO "Executive Assistant" billed 1,828 total hours in 2016 (148 hours less than Defendant Danielle Sanders).

151.   Certainly, in 2016, Defendant Danielle Sanders was not the hardest-working employee of all of NATCO's approximately 30 hourly employees.

152.   Accordingly, in 2016, Defendant Danielle Sanders did not actually perform 1,976 hours of work and thus falsely submitted documentation to the contrary and received unjustified, fraudulent hourly wages from NATCO.

153.   As recounted above, NATCO's employees and affiliated persons have recounted on numerous occasions that Defendant Danielle Sanders was rarely in NATCO's office and rarely performed work for NATCO in 2016.

154.   Thus, Defendant Danielle Sanders submitted false weekly time reports amounting to a total of 1,976 hours of work in 2016 for work she did not actually perform.

155.    Upon information and belief, Defendant Danielle Sanders' improper and fraudulent practice of billing NATCO for hours she did not actually work occurred in years prior to 2016.  Discovery in this matter will uncover her billing practices for prior years.

156.    Defendant Danielle Sanders is the third highest-paid hourly employee and makes more on an hourly basis than another Executive Assistant, an IT Supervisor, Computer Specialists, a Marketing Coordinator, a Network Service Analyst, Bookkeepers, a Supply Coordinator, a Receptionist/Console Operator, an Assigner, a Dispatcher, Technicians, Construction Linemen, and a Cable Maintenance employee.

157.    Even more troubling, Defendant Danielle Sanders, under her supposed role as "Senior Executive Assistant," was awarded a *$33,000 bonus* in 2016 and has received a total of *$200,400* in bonuses since 2011.

158.    In 2016, while Defendant Danielle Sanders received a $33,000 bonus for herself, *30 other NATCO employees* earned a *combined total* of $32,025 in bonuses.  That is, Defendant Danielle Sanders's 2016 NATCO performance bonus under her role as an "assistant" exceeded the *combined* bonuses of 30 other NATCO employees.

159.    Defendant Danielle Sanders would not have received such bonuses if the Sanders Family did not control NATCO.

160.    Further, assistants in related corporations do not receive similarly large bonuses.

161.    There is no legitimate business purpose in paying Defendant Danielle Sanders at least $200,400 in bonuses since 2011—particularly compared to other NATCO employee bonuses.

23

#### 4.    The Sanders Family's Fair Market Compensation

162.    The Sanders Family's annual pay overage is approximately ***$1 million***.  That is, the Sanders Family members are receiving $1 million more than the fair market rates and thus looting the corporation by at least that amount on an annual basis.

163.    In a business the size of NATCO, is it extremely unlikely and unorthodox to compensate ***both*** a "Chief Executive Officer," as Defendant Steven Sanders, Sr., claims he is, and a "President and General Manager," as Defendant Steven Sanders, Jr., claims he is.  That is, ***one*** individual routinely adopts both positions as President and CEO in a business the size of NATCO and a single person is accordingly and appropriately compensated.

164.    Indeed, NATCO's bylaws even expressly state that "[t]he President shall be the chief executive officer of [NATCO] and . . . shall in general supervise and control all of the business and affairs of [NATCO]."  And, as aforementioned, Defendant Steven Sanders, Jr.'s personal website provides that "he is responsible for the overall leadership and strategic direction of the company."  Thus, Defendant Steven Sanders, Sr.'s title as "Chief Executive Officer" is redundant and he should not be compensated for that supposed role—particularly when he does not actually perform day-to-work for NATCO as outlined above.  As such, Defendant Steven Sanders, Sr., should only be paid as NATCO's board Chairman, which averages a fair market total compensation of approximately $130,000 (not the $982,760 Defendant Steven Sanders, Sr., received in 2016).

165.    With the adjustment being made that Steven Sanders, Sr., is not appropriately named or compensated as a "Chief Executive Officer," the Sanders Family's annual pay overage is approximately ***$1.1 million***.  That is, after adjusting for redundant compensation, the Sanders

24

Family members are receiving $1.1 million more than the fair market rates and thus looting the corporation by at least that amount on an annual basis.

### 5.    The Sanders Family's Additional Improper Expenses

166.    The Sanders Family's looting of NATCO goes beyond excessive compensation.

167.    Under the direction of the Sanders Family, NATCO purchased a $69,000 Cadillac Escalade automobile for Defendant Danielle Sanders, a supposed "assistant" to the corporation.

168.    NATCO did not purchase the other NATCO "executive assistant" a luxury automobile, nor any automobile.

169.    Under the direction of the Sanders Family, NATCO purchased a $66,392.17 Chevrolet Camaro automobile for Defendant Steven Sanders, Jr.

170.    Under the direction of the Sanders Family, NATCO purchased a $98,962.24 BMW X5M automobile for Defendant Steven Sanders, Sr.

171.    Cadillac Escalade, Chevrolet Camaro, and BMW X5M automobiles (all with a purchase price of over $65,000) are luxury automobiles.

172.    Purchasing such luxury automobiles for the Sanders Family members with NATCO's corporate funds has no legitimate business purpose.

173.    No other luxury automobiles were purchased for NATCO's employees or affiliates other than those purchased for Defendants Danielle Sanders, Steven Sanders, Jr., and Steven Sanders, Sr.

174.    In addition, the Sanders Family has submitted business reimbursements for personal expenses with no legitimate business purpose.

175.    For instance, in 2016, Defendant Steven Sanders, Jr., has billed the corporation for personal expenses such as (i) a "hog roast" for approximately $300; (ii) "March Mania" for

$482.90; (iii) a "Roku 4" device for $279.93; (iv) a "rouse portrait" for $130; and (v) "Rotary Pancake Tickets" for $250.

176.    Such expenses have no legitimate business purpose.

177.    In addition, in 2016, Defendant Steven Sanders, Jr., submitted his American Express Credit Card monthly bills for reimbursement by NATCO. Corporate records show the submission of significant American Express monthly charges, including (i) $27,081.21; (ii) $24,321.30; (iii) $31,865.04; (iv) $25,271.30; (v) $5,590.85; (vi) $4,609.99; (vii) $3,574.54; (viii) $1,421.66; and (ix) $2,491.79. Upon information and belief, certain of his American Express Credit Card expenses have no legitimate business purposes.

178.    Discovery in this matter will unlikely uncover additional personal expenses having no legitimate business purposes submitted by the Sanders Family for NATCO's reimbursement.

**F.    Removal of Directors for Voicing Objections to the Sanders Family's Actions**

179.    Warren Stidolph, Susan Mazer, and Gerald Duffy (collectively, the "Objecting Board Members") were former board members of NATCO as outlined above.

180.    Throughout 2011 to 2016, the Objecting Board Members began objecting—both in board meetings and otherwise—to the exorbitant compensation and other wrongful spending made and received by the Sanders Family as outlined above.

181.    In addition, the Objecting Board Members challenged and disagreed with NATCO's decision to focus the corporation's capital and efforts outside its core telecommunications business.

182.    Indeed, the Objecting Board Members challenged the decisions to start restaurant operations and "invest" in precious metals with NATCO's funds, which ultimately led to significant losses for NATCO.

183.    Such objections by the Objecting Board Members were ignored entirely by Defendants Steven Sanders, Sr., and Steven Sanders, Jr.

184.    The Sanders Family—along with Jill Horvath's shares (Defendant Steven Sanders, Sr.'s sister)—effectively controlled NATCO due to their majority ownership of NATCO's voting shares as outlined above.

185.    As Defendants Steven Sanders, Sr., and Steven Sanders, Jr., did not appreciate the objections of the Objecting Board Members—and, in particular, the objections to their exorbitant compensation—Defendants orchestrated a scheme to remove the Objecting Board Members from NATCO's board of directors.

186.    On April 23, 2016, the Objecting Board Members were removed from NATCO's board of directors.

187.    Without prior warning of their desire to remove the Objecting Board Members, Defendants Steven Sanders, Sr., and Steven Sanders, Jr., and Jill Horvath voted their majority combined shares to remove the Objecting Board Members.

188.    The Objecting Board Members were replaced with individuals that had no prior experience with NATCO or its telecommunications business.

189.    The three Objecting Board Members were replaced with Defendants David Ethredge, Ioulia Nikiforova, and Kristine Kolbus.

190.    Defendant David Ethredge is an Arkansas attorney with no prior experience with NATCO or the telecommunications business.

191.   Defendant Ioulia Nikiforova is a financial advisor based in the Fort Lauderdale, Florida area with no prior experience with NATCO or the telecommunications business.

192.   Upon information and belief, Defendant Steven Sanders, Sr., is in a romantic relationship with Defendant Ioulia Nikiforova's close social acquaintance.

193.   Defendant Kristine Kolbus is a real estate investor based in the Denver, Colorado area with no prior experience with NATCO or the telecommunications business.

194.   Defendant Kristine Kolbus is the daughter of Jill Horvath and the niece of Defendant Steven Sanders, Sr., and is thus a member of the Sanders Family.

195.   Jill Horvath orchestrated a deal with Defendants Steven Sanders, Sr., and Steven Sanders, Jr., that she would vote her shares in favor of removing the Objecting Board Members if her daughter (Defendant Kristine Kolbus) was named as a replacement board member.

196.   Despite their various requests, the Objecting Board Members have not been provided documentation or other information outlining the business justification for replacing the Objecting Board Members with Defendants David Ethredge, Ioulia Nikiforova, and Kristine Kolbus, none of whom have any prior experience with NATCO or the telecommunications business.

197.   Indeed, on numerous occasions, Plaintiff Chamberlain requested a copy of the April 2016 meeting minutes in which the Objecting Board Members were removed and in which they were not allowed to participate but were not timely provided to them.

198.   When NATCO finally received such board minutes after Plaintiff Chamberlain's threat of litigation under its Arkansas books and records rights for shareholders, the April 2016 Minutes indicate that "the board of directors meetings [will] be closed to outside persons, unless reporting or participating as part of the approved Orders of the Day" as "it is imperative that

28

th[e] board of directors be able to have efficient, adequately private meetings to effectively represent the stockholders' interest."

199.    Accordingly, Plaintiff Chamberlain and other NATCO shareholders have not been provided a business justification for the removal of the Objecting Board Members under the guise of "effectively represent[ing] the stockholders' interest."

200.    In sum, the Objecting Board Members were replaced with a lawyer having no experience in the telecommunications business (Defendant David Ethredge), a Florida financial advisor (Defendant Ioulia Nikiforova) who is a close friend of an individual in a romantic relationship with NATCO's Chairman, and an extended member of the Sanders Family with no experience with NATCO or the telecommunications industry (Defendant Kristine Kolbus).

201.    The Objecting Board Members were removed from the board of directors for objecting to the Sanders Family's excessive compensation and other improper use of NATCO's funds.

202.    All board members are paid significant fees from NATCO for attending NATCO board meetings.   Indeed, NATCO currently pays each board member at least $7,000 for attending board meetings and paid at least $88,615.77 in total for board meetings and fees in 2016.

203.    Accordingly, Defendant David Ethredge, Defendant Ioulia Nikiforova, and Defendant Kristine Kolbus have a direct, personal interest in being NATCO board members by receiving significant fees for attending board meetings.

204.    Further, in a November 9, 2016 board meeting, Defendant David Ethredge, Defendant Ioulia Nikiforova, Defendant Kristine Kolbus, Defendant Steven Sanders, Sr., and Defendant Steven Sanders, Jr., "voted in favor" of the 2016 excessive bonuses for NATCO's

29

employees, including the (i) $625,000 bonus to Defendant Steven Sanders, Sr.; (ii) $300,000 bonus to Defendant Steven Sanders, Jr.; and (iii) $33,000 to Defendant Danielle Sanders as outlined above.

205.    The 2016 bonuses awarded to these individuals were excessive, significantly above market rates, and inherently unfair.

206.    In November 2016 (and currently), Defendant David Ethredge, Defendant Ioulia Nikiforova, Defendant Kristine Kolbus, Defendant Steven Sanders, Sr., and Defendant Steven Sanders, Jr., were (and are) NATCO's fiduciaries due to their roles as board members.

207.    Accordingly, Defendant David Ethredge, Defendant Ioulia Nikiforova, Defendant Kristine Kolbus, Defendant Steven Sanders, Sr., and Defendant Steven Sanders, Jr., breached their fiduciary duties to NATCO by awarding such 2016 bonuses, which also amounted to corporate waste as outlined herein.

208.    Defendant David Ethredge, Defendant Ioulia Nikiforova, Defendant Kristine Kolbus, Defendant Steven Sanders, Sr., and Defendant Steven Sanders, Jr., voted in favor of such 2016 bonuses during a board meeting physically held in Flippin, Arkansas.

209.    There is no legitimate business justification for voting for such bonuses.

210.    Defendant David Ethredge, Defendant Ioulia Nikiforova, Defendant Kristine Kolbus, Defendant Steven Sanders, Sr., and Defendant Steven Sanders, Jr., breached their fiduciary duties to the company and engaged in corporate waste by voting for this inherently unfair and excessive compensation.

211.    Defendant David Ethredge, Defendant Ioulia Nikiforova, Defendant Kristine Kolbus, Defendant Steven Sanders, Sr., and Defendant Steven Sanders, Jr., voted in favor of the 2016 bonuses, in part, due to their own personal interests outside any benefit to NATCO.

212.   In an August 2016 board meeting, Defendant Steven Sanders, Jr., gave a PowerPoint presentation which, in part, stated "not using workers to the fullest of their abilities" is corporate "waste" that "should be reduced or eliminated," and even noted that NATCO's "payroll is a large expense item."  Accordingly, Defendant David Ethredge, Defendant Ioulia Nikiforova, Defendant Kristine Kolbus, Defendant Steven Sanders, Sr., and Defendant Steven Sanders, Jr., were all on express notice that excessive compensation—especially for ill-contrived work or work not actually performed—amounts to corporate "waste" for NATCO, but months later voted in favor of excessive bonuses in November 2016 in breach of their fiduciary duties and in detriment to NATCO's shareholders.

## VI.   DAMAGES ALLEGATIONS

213.   As a direct and proximate result of Defendants' wrongdoing, NATCO has suffered and will continue to suffer damages.

214.   Defendants' actions have, for example, permitted funds to be diverted from NATCO in the form of excessive and undeserved compensation and improper business expenses.

215.   NATCO has been directly and substantially injured by reason of Defendants' wrongdoing; the precise amount of such damages will be determined throughout discovery and trial.

216.   Plaintiff Chamberlain seeks a return of such damages and requests that a *pro rata* portion be returned to Plaintiff Chamberlain and other minority shareholders that are not affiliated with the Sanders Family, which effectively controls the corporation.  Otherwise, returning the damages recovery entirely to NATCO would simply return the funds to the control of the wrongdoers. As such, Plaintiff Chamberlain seeks a 40.8547% *pro rata* recovery of such damages based upon its NATCO stock ownership and that other minority shareholders similarly

receive their *pro rata* share based on their stock ownership, with the remainder being returned directly to NATCO. *See, e.g., Hall v. Staha*, 314 Ark. 71, 83, 858 S.W.2d 672, 678 (Ark. 1993).

217.    Further, Plaintiff Chamberlain, derivatively on behalf of NATCO, seeks injunctive relief ordering NATCO to establish an independent, three-person compensation committee to establish all future salaries and bonuses.   Due to the Sanders Family's effective control of NATCO, otherwise, such inherently unfair and excessive salaries are likely to continue.

218.    Accordingly, Plaintiff Chamberlain seeks an order establishing an independent, three-person committee to establish all future compensation with the committee consisting of one member appointed by Plaintiff Chamberlain and the other minority shareholders, one member appointed by Defendants, and the third member appointed by the previous two members.   Such a committee's membership would exclude all parties, all shareholders, and any others having either an either direct or indirect interest in NATCO and the committee's decisions would be binding on NATCO. *See id.* at 85-86.

219.    In addition, Plaintiff Chamberlain, derivatively on behalf of NATCO, seeks its legal fees, costs, and/or any other amounts in bringing this action on behalf of NATCO and for the benefit of NATCO and other relief outlined below.

220.    Finally, the foregoing actions by Defendants were intentionally and fraudulently concealed from Plaintiff Chamberlain and other NATCO shareholders.   In particular, Defendant Danielle Sanders' fraudulent timekeeping, the improper business expenses, and the most recent 2016 bonuses were fraudulently concealed by Defendants and only uncovered by Plaintiff Chamberlain via a books and records inspection that occurred on or around April 12, 2017.

Accordingly, the applicable statutes of limitations related to such conduct are therefore tolled from the date of discovery of such fraudulent and improper behavior.

## VII.   DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

221.   Plaintiff incorporates by reference and re-alleges each allegation above and contained herein as though fully set forth herein.

222.   Plaintiff Chamberlain brings this action derivatively in the right and for the benefit of NATCO to redress injuries suffered, and to be suffered, by NATCO as a direct result of the breaches of fiduciary duty, corporate waste, and fraud as outlined herein.  NATCO is named as a Nominal Defendant solely in a derivative capacity.

223.   Plaintiff Chamberlain will adequately and fairly represent the interests of NATCO in enforcing and prosecuting its rights.

224.   Plaintiff Chamberlain was a shareholder of NATCO at the time of wrongdoing complained of, has continuously been a shareholder since that time, and is currently a NATCO shareholder.

225.   The current board of directors of NATCO consists of five individuals: (i) Defendant Steven Sanders, Sr.; (ii) Defendant Steven Sanders, Jr.; (iii) Defendant David Ethredge; (iv) Defendant Ioulia Nikiforova; and (v) Defendant Kristine Kolbus.   Plaintiff Chamberlain has not made any demand on NATCO's present board of directors to institute this action because such a demand would be futile.

226.   Demand on the NATCO's present board of directors is futile because, in breach of their fiduciary duties, all of such Defendants either participated directly in the corporation's looting, voted in favor of excessive compensation to the detriment of NATCO in violation of their fiduciary duties, and/or in bad faith consciously disregarded NATCO's conduct for their

own personal benefit.   In addition, previous demands and concerns raised by Plaintiff Chamberlain's representatives and board member Gerald Duffy were ignored.

227.    Each of these Defendants is therefore incapable of independently and disinterestedly considering a demand to vigorously prosecute this action.  Indeed, each of these Defendants is incapable of acting independently due to their joint control of NATCO and because this action accuses them of wrongdoing and acting solely in their personal interests to the detriment of NATCO and its shareholders.  Further, the actions alleged herein show they did not validly exercise their business judgment.

228.    Defendant Steven Sanders, Sr., is incapable of considering a demand because this action accuses him of wrongdoing, including his receipt of over $5.4 million in inherently unfair and excessive compensation since 2011, along with improper use of NATCO's funds for his own personal use.  Defendant Steven Sanders, Sr., is personally responsible for such wrongdoing and is thus incapable of considering a demand.

229.    Defendant Steven Sanders, Jr., is incapable of considering a demand because this action accuses him of wrongdoing, including his receipt of over $2.3 million in inherently unfair and excessive compensation since 2011, along with improper use of NATCO's funds for his own personal use.  Defendant Steven Sanders, Jr., is personally responsible for such wrongdoing and is thus incapable of considering a demand.

230.    Defendant David Ethredge is incapable of considering a demand because this action accuses him of wrongdoing, including voting in favor of inherently unfair and excessive compensation in November 2016 shortly after joining NATCO's board of directors and because he has a personal financial interest in being on NATCO's board due to his board fees and other compensation despite his lack of experience in NATCO's business operations.

34

231.   Defendant Ioulia Nikiforova is incapable of considering a demand because this action accuses her of wrongdoing, including voting in favor of inherently unfair and excessive compensation in November 2016 shortly after joining NATCO's board of directors and because she has a personal financial interest in being on NATCO's board due to her board fees and other compensation despite her lack of experience in NATCO's business operations. Further, upon information and belief, Defendant Steven Sanders, Sr., is in a romantic relationship with Defendant Ioulia Nikiforova's close social acquaintance and thus Defendant Ioulia Nikiforova is unlikely to vigorously prosecute this action against Defendant Steven Sanders, Sr., and the Sanders Family.

232.   Defendant Kristine Kolbus is incapable of considering a demand because this action accuses her of wrongdoing, including voting in favor of inherently unfair and excessive compensation in November 2016 shortly after joining NATCO's board of directors and because she has a personal financial interest in being on NATCO's board due to her board fees and other compensation despite her lack of experience in NATCO's business operations. Further, Defendant Kristine Kolbus has a familial relationship with three other Defendants in this action and is thus unlikely to vigorously prosecute this action against members of the Sanders Family.

233.   Finally, Defendant Danielle Sanders committed fraud against NATCO as outlined herein. While not formally a board member or executive under her role as a "Senior Executive Assistant," it would be futile to ask her to return her ill-conceived gains through false time entries given that her husband (Defendant Steven Sanders, Jr.) and her father-in-law (Defendant Steven Sanders, Sr.) effectively control NATCO and are likely aware of her wrongdoing and have not demanded return of such money, formally disciplined her, nor prosecuted any action

against her.  Accordingly, only a fraud claim (Count III) is brought against Defendant Danielle Sanders derivatively on behalf of NATCO.

## VIII.   CLAIMS FOR RELIEF

### COUNT I
### BREACH OF FIDUCIARY DUTY
**(Against Defendant Steven Sanders, Sr., Defendant Steven Sanders, Jr., Defendant David Ethredge, Defendant Ioulia Nikiforova, and Defendant Kristine Kolbus)**

234.   Plaintiff Chamberlain incorporates by reference and re-alleges each allegation contained above as though fully set forth herein.

235.   Defendants Steven Sanders, Sr., Steven Sanders, Jr., David Ethredge, Ioulia Nikiforova, and Kristine Kolbus owed and owe NATCO fiduciary duties of fair dealing, good faith, honesty, and loyalty by their positions as board members and/or officers of NATCO and/or officers.

236.   As detailed above, Defendants Steven Sanders, Sr., Steven Sanders, Jr., David Ethredge, Ioulia Nikiforova, and Kristine Kolbus breached their fiduciary duties of fair dealing, good faith, honesty, and loyalty by directly engaging in, permitting, or voting in favor of inherently unfair and excessive salaries, permitting corporate funds to be used for personal uses to the detriment of the corporation, and acting solely in their own personal benefit to the detriment of NATCO's shareholders.

237.   As a direct and proximate cause of Defendants Steven Sanders, Sr., Steven Sanders, Jr., David Ethredge, Ioulia Nikiforova, and Kristine Kolbus's breach of their fiduciary duties, NATCO has suffered damages and will continue to suffer damages.

### COUNT II
### CORPORATE WASTE
**(Against Defendant Steven Sanders, Sr., Defendant Steven Sanders, Jr., Defendant David Ethredge, Defendant Ioulia Nikiforova, and Defendant Kristine Kolbus)**

238.   Plaintiff Chamberlain incorporates by reference and re-alleges each allegation contained above as though fully set forth herein.

239.   Defendants Steven Sanders, Sr., Steven Sanders, Jr., David Ethredge, Ioulia Nikiforova, and Kristine Kolbus committed corporate waste by authorizing compensation outlined herein that is so one-sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration.

240.   For instance, in November 2016, Defendants Steven Sanders, Sr., Steven Sanders, Jr., David Ethredge,, Ioulia Nikiforova, and Kristine Kolbus authorized a $625,000 performance bonus to an individual that is not involved in the operations of NATCO, authorized a $300,000 bonus to an individual who has overseen a company significantly declining as he pursues personal interests outside NATCO's core business, and a $33,000 bonus to an "assistant" who performs little to no actual work for NATCO.   Further, certain of these Defendants have authorized and permitted similarly inherently unfair and excessive salaries and bonuses prior to November 2016.   No business person of ordinary, sound judgment could conclude that NATCO has received adequate consideration for such inherently unfair and excessive compensation.

241.   By approving and voting for such compensation, Defendants Steven Sanders, Sr., Steven Sanders, Jr., David Ethredge, Ioulia Nikiforova, and Kristine Kolbus have wasted NATCO's assets.

242.   As a direct and proximate cause of Defendants Steven Sanders, Sr., Steven Sanders, Jr., David Ethredge, Ioulia Nikiforova, and Kristine Kolbus's corporate waste, NATCO has suffered damages and will continue to suffer damages.

**COUNT III**
**FRAUD**
**(Against Defendant Danielle Sanders)**

243.    Plaintiff Chamberlain incorporates by reference and re-alleges each allegation contained above as though fully set forth herein.

244.    Defendant Danielle Sanders made false representation of material fact by submitting records and documentation to NATCO indicating she performed hourly work she did not actually perform.

245.    Defendant Danielle Sanders knew her representations were false or that there was insufficient evidence upon which to make her representations based on the knowledge of her own actual work.

246.    Defendant Danielle Sanders intended to induce action by NATCO's reliance upon the representation such that NATCO would pay her hourly rate for work she did not actually perform.

247.    NATCO justifiably relied on Defendant Danielle Sanders's representations by believing the records to be true and subsequently paying her related funds.  Indeed, NATCO paid Defendant Danielle Sanders $47,424 in hourly-based compensation in 2016.

248.    NATCO suffered damages as a result of the false representations by paying NATCO funds for work that was not actually performed by Defendant Danielle Sanders.

### COUNT IV
### INJUNCTIVE RELIEF

249.    Plaintiff Chamberlain incorporates by reference and re-alleges each allegation contained above as though fully set forth herein.

250.    Plaintiff Chamberlain seeks a return of such damages and requests that a *pro rata* portion be returned to Plaintiff Chamberlain and other minority shareholders that are not affiliated with the Sanders Family, which effectively controls the corporation.   Otherwise, returning the damages recovery entirely to NATCO would simply return the funds to the control

of the wrongdoers.  As such, Plaintiff Chamberlain seeks a 40.8547% *pro rata* recovery of such damages based upon its NATCO stock ownership and that other minority shareholders similarly receive their *pro rata* share based on their stock ownership, with the remainder being returned directly to NATCO.

251.    Further, as a result of the previously described actions of Defendants Steven Sanders, Sr., Steven Sanders, Jr., David Ethredge, Ioulia Nikiforova, and Kristine Kolbus permitting inherently unfair and excessive compensation to the detriment of NATCO's shareholders, Plaintiff Chamberlain seeks an order establishing an independent, three-person committee to establish all future compensation of NATCO's employees with the committee consisting of one member appointed by Plaintiff Chamberlain and the other minority shareholders, one member appointed by Defendants, and the third member appointed by the previous two members.  Such a committee's membership would exclude all parties, all shareholders, and any others having either an either direct or indirect interest in NATCO and the committee's decisions would be binding on NATCO.

252.    Such injunctive relief is justified to prohibit Defendants from making further disbursements from NATCO's funds for the benefit of Defendants and to institute commercially reasonable compensation to NATCO's employees for the benefit of NATCO and its shareholders.

## IX.    PRAYER FOR RELIEF

WHEREFORE, on behalf of Nominal Defendant NATCO, Plaintiff Chamberlain prays for the following relief:

A.      A judgment that Plaintiff Chamberlain may maintain this derivative action on behalf of NATCO and that Plaintiff Chamberlain is the proper and adequate representative of NATCO;

B.      A judgment against Defendants for the amount of damages sustained by NATCO as a result of breaches of fiduciary duty, corporate waste, and fraud outlined herein, jointly and severally, in an amount to be determined at trial, together with pre- and post- judgment interest at the maximum legal rate allowable by law;

C.      A *pro rata* distribution of such an award to be distributed *pro rata* to Plaintiff Chamberlain and the other minority shareholders, with the remainder returned directly to NATCO;

D.      A judgment ordering the injunctive relief of an independent compensation committee to announce all NATCO employees' compensation;

E.      A judgment awarding to Plaintiff Chamberlain the costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, and other costs and expenses;

F.      Granting such other and further relief as the Court deems just and equitable.

## X.      JURY DEMAND

Plaintiff Chamberlain demands a trial by jury on all applicable issues.


Respectfully submitted,


Chamberlain Family Limited Partnership, derivatively on behalf of NATCO Communications, Inc.


40

Dated: May 3, 2017

/s/ *Robert L. Jones, III*

Robert L. Jones III
Arkansas Bar No. 69041
Vicki Bronson
Arkansas Bar No. 97058
**CONNER & WINTERS, LLP**
4375 N. Vantage Drive, Suite 405
Fayetteville, AR  72703
Telephone: (479) 587-3421
Facsimile: (479) 587-1426
bjones@cwlaw.com
vbronson@cwlaw.com


William C. O'Neil
Jeffrey J. Huelskamp
Cara Lawson
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, IL 60601
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700
woneil@winston.com
jhuelskamp@winston.com
clawson@winston.com
*Pro Hac Vice pending*

### VERIFICATION OF WARREN STIDOLPH
### (1/3 PARTNER OF PLAINTIFF CHAMBERLAIN FAMILY LIMITED PARTNERSHIP)

I, Warren Stidolph, am one of three partners of Plaintiff Chamberlain Family Limited Parternship, which currently holds and has continuously held shares in Nominal Defendant NATCO Communications, Inc. during all of the relevant times that events alleged to have taken place in this Complaint occurred. I have reviewed the foregoing VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT and the facts set forth therein are true and correct to the best of my knowledge, information, and belief. Having reviewed the foregoing VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT, I hereby authorize its filing.

_____
Warren Stidolph

SWORN AND SUBSCRIBED before me
this ____ day of May, 2017.

_____
Notary Public
My Commission Expires:

OFFICIAL SEAL
CAROL A WAGGE
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires Sept. 20, 2017

### VERIFICATION OF SUSAN MAZER
### (1/3 PARTNER OF PLAINTIFF CHAMBERLAIN FAMILY LIMITED PARTNERSHIP)

      I, Susan Mazer, am one of three partners of Plaintiff Chamberlain Family Limited Partnership, which currently holds and has continuously held shares in Nominal Defendant NATCO Communications, Inc. during all of the relevant times that events alleged to have taken place in this Complaint occurred. I have reviewed the foregoing VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT and the facts set forth therein are true and correct to the best of my knowledge, information, and belief. Having reviewed the foregoing VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT, I hereby authorize its filing.

 

Susan Mazer

SWORN AND SUBSCRIBED before me
this _____/_____ day of May, 2017.

OFFICIAL SEAL
CAROL A WAGGE
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires Sept. 20, 2017

Notary Public
My Commission Expires:

46